GARRISON, Judge.
The defendant, Corneal Knapper, was charged by grand jury indictment with second degree murder, a violation of LSA-R.S. 14:30.1. After trial, a jury found the defendant guilty as charged. Following this verdict, the defendant made a motion for new trial which was denied by the trial judge. Defendant was later sentenced to serve life in prison without benefit of parole, probation or suspension of sentence. Defendant now appeals.
On July 10, 1985, Timothy Loving was shot to death by the defendant and Rogers *703 Johnson[1] on the front porch of an apartment occupied by Byron and Carrie Snead in the St. Bernard Housing Project in New Orleans. Loving suffered at least nine gunshot wounds to the chest, back, arms and hip. It was determined that the bullets found in Loving’s body came from at least two different guns.
According to Snead, Loving arrived at the Snead residence shortly before the shooting and told Snead that he heard that he was being sought by the police on a burglary charge. Loving had a gun in his possession but was allegedly told by Snead to put the gun upstairs. Later that evening, the defendant and his nephew, Johnson arrived at the Snead residence and approached Loving and Snead who were sitting on the front porch. Loving, who knew the defendant and Johnson, was questioned by them about his alleged involvement in the burglary of the home of defendant’s mother and Johnson’s grandmother.
According to Snead, words were exchanged and Knapper and Johnson then began firing shots at Loving. At that time, Snead left the porch and jumped over a fence toward the back of the apartment. When the shooting stopped, he entered the apartment through the back door and found Loving’s body in the front doorway.
After the police were summoned by a neighbor, Snead initially told them that he did not witness the shooting. Several days later, after moving his family to another part of the city, he recanted that statement saying that he had originally denied witnessing the shooting because he was afraid. He then told the police the details of the shooting which he had witnessed. Snead admitted at trial that he disposed of the weapon Loving brought to his home by throwing it into Lake Pontchartrain because he was a convicted felon and a gun found in his possession would have subjected him to being charged as a convicted felon in possession of a firearm, a violation of LSA-R.S. 14:95.1.
The defendant argued that the shooting was in self-defense. The defense presented witnesses who supported the position that Loving was a violent, aggressive person who stole to support his cocaine habit and who always carried a gun. One defense witness, George Smith, testified that he saw the victim, the defendant and Johnson having a heated argument outside of Snead’s apartment. Smith claimed that he saw Loving brandishing a gun and after gunfire erupted, he fled the scene. He testified that Loving “must have” fired the first shot but after much prompting by the defense attorney, he stated that he saw Loving fire the first shot. Smith admitted that he never told police that he witnessed the shooting. His testimony revealed that he knew the defendant prior to the shooting and he claimed that they had previously discussed Loving’s violent nature.
The defendant testified that he and Johnson had approached Loving at Snead’s apartment about the burglary and had carried weapons for their own protection because of their knowledge of Loving’s alleged violent nature. He testified that during their heated argument, Loving brandished a gun. The defendant claims that he heard gunfire but did not see if Loving or Johnson had fired the first shot. The defendant stated that he then returned fire in self-defense. He later disposed of his gun in the Mississippi River.
The defendant corroborated George Smith’s statement that he was present at the scene of the shooting; however, Byron Snead testified on direct examination and on rebuttal that no other adults were present at the scene.
In his sole assignment of error, the defendant argues that the trial court erred in denying his motion for new trial based upon newly discovered evidence. Specifically, he alleges that the testimony of a witness who was discovered after trial and who witnessed the shooting would have convinced the jury that Loving shot first *704 and that the defendant shot only in self-defense.
LSA-C.Cr.P. Art. 851 provides, in pertinent part:
“The motion for a new trial is based on the supposition that injustice has been done the defendant, and, unless such is shown to have been the case the motion shall be denied, no matter upon what allegations it is grounded.
The court, on motion of the defendant, shall grant a new trial whenever: ...
(3) New and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during the trial, is available, and if the evidence had been introduced at the trial it would probably have changed the verdict or judgment of guilty.”
A new trial is required when the following four factors have been established: 1) the evidence must have been discovered after trial; 2) the late discovery of the evidence was not due to any lack of diligence on the part of the defense; 3) the evidence must be material; and 4) it must be probable that the evidence would have produced a different verdict if the jury had heard it. State v. Prudholm, 446 So.2d 729 (La.1984).
At the hearing on defendant’s motion for new trial, the defense counsel’s investigator testified that four months prior to trial, he learned that a man named “Zack” may have witnessed the shooting. He attempted to locate this person but was unable to do so prior to trial. However, on April 8, 1986, the day on which the jury was chosen, he was informed that a relative of this man lived across the courtyard from the scene of the shooting. On the next day, he contacted a woman who said that her grandson, Zachary Lane, witnessed the shooting. However, she did not know how to contact him and she refused to divulge the names of the man’s parents.
The investigator was able to locate Zachary’s mother but she also did not know how to contact him. After receiving a tip that Zachary was in the V.A. Hospital under another name, he discovered that the man in the hospital was Zachary’s father who also did not know how to contact Zachary. Zachary’s girlfriend was then located and after she indicated that Zachary might be in jail, a check of area prisons by the investigator revealed that Zachary Lane was neither incarcerated nor had he been incarcerated in the recent past. Finally, on April 23, 1986, twelve days after the defendant’s trial had ended, the investigator located Zachary Lane after learning that he had been seen in the Calliope housing project in New Orleans.
At the hearing on the motion for new trial, Zachary Lane testified that, at the time of the shooting, he was out on the courtyard near his grandmother’s apartment which was located across the courtyard from the Snead apartment. Prior to the shooting, he saw Loving arguing with the defendant while Johnson stood nearby talking to another man. He claimed that he saw Loving brandishing a gun and then firing at the defendant and Johnson who then returned fire. Lane claims that as he ran from the scene, he saw the defendant and Knapper running away and Snead jumping the fence. He testified that Snead then returned to the scene, retrieved Loving’s gun and brought it into his apartment.
Lane admitted that he denied any knowledge of the shooting when questioned by police on the evening of the shooting but explained that he did so because of his belief that he was a suspect in the shooting. He stated that the only reason that he finally came forward was to prevent his grandmother from continuing to be bothered by the defense counsel’s investigator.
Ms. Bessie Sanders, also a resident of the St. Bernard Project, testified that she lived in an apartment which did not overlook the courtyard where the murder occurred but instead overlooked St. Bernard Avenue. She testified that after she heard the shots she looked out of her window and saw Lane standing on the avenue. She testified that approximately twenty minutes after the shooting, she saw Lane walking past her window. Ms. Rita Alexander, who lived on the courtyard, testified that at *705 some time prior to the shooting, she saw Lane standing in the courtyard. However, due to the placement of her apartment, she was unable to observe the shooting.
Based on the above, the defendant clearly established three of the four factors necessary for the granting of a new trial based upon newly discovered evidence. Zachary Lane’s testimony was unavailable until after the trial due to defense counsel’s inability to locate him. Clearly, defense counsel was diligent in his efforts to locate Lane. Furthermore, the testimony offered by Lane was certainly material to this case. Therefore, the only remaining question is whether or not Lane’s testimony probably would have caused the jury to reach a different verdict.
The defendant argues that Lane’s testimony was vital to his case because it corroborated his and Smith’s testimony that Loving had a gun during the shooting and that Loving fired the first shot. The defendant argues that Lane’s testimony was especially crucial because the jury could have disbelieved the defendant due to the self-serving nature of his testimony and could have disbelieved Smith because the trial judge commented that he did not believe Smith’s allegation that Loving fired the first shot.
It must be noted that following that comment by the trial judge, the defense made a motion for a mistrial which was granted by the judge. The defense counsel then changed his mind and asked instead for an admonition to the jury to disregard that comment. Therefore, the defense cannot now complain about the trial court’s action. However, the defendant argues that Smith’s testimony was tainted by the trial judge’s remark and, therefore, Lane’s testimony would have corroborated Smith’s testimony and resulted in a different jury verdict.
The defendant also claims that Lane’s testimony places Smith at the scene of the shooting. However, Lane only stated that he saw another man talking to Johnson prior to the shooting. That does not establish that the other man was Smith.
Finally, the defense claims that Lane was the only witness who could testify that he saw Snead pick up Loving’s gun. Based on these facts, the defendant concludes that a jury presented with Lane’s testimony probably would have reached a different verdict.
It must first be noted that Lane told the police on the evening of the shooting that he did not witness the shooting. He admitted that he knew of defense counsel’s efforts to locate him prior to trial but did not come forward until after and then only to get the defense to stop bothering his grandmother. He also admitted that he was a close friend of a deceased nephew of the defendant.
As noted by the State, none of the bullets hitting Loving entered from the front and no spent bullets from a third gun, presumably Loving’s gun, were found at the scene. Furthermore, Smith claimed to have returned to the scene after the shooting but did not see Snead retrieve Loving’s gun as Lane claimed.
The time sequence of events after the shooting given by Lane is completely inconsistent with the testimony of Bessie Sanders. Lane testified that he was in the courtyard when shots were first fired and that he then ran from the scene and noticed the defendant and Johnson running from the scene and Snead jumping over the fence. He also testified that he later saw Snead return, retrieve Loving’s gun and bring it into his apartment.
However, Sanders testified that right after the shots were fired, she looked out of her window and saw Lane standing on St. Bernard Avenue, not in the courtyard on the other side of the building as he stated. She saw Lane walk toward the courtyard approximately twenty minutes after the shooting and after the police had arrived. Because the police did not find a gun near Loving’s body, it is not probable that a jury would have believed that Lane was able to see Snead retrieve the gun when Lane was seen away from the courtyard right after the shooting and did not return until after the police arrived.
*706 Based on these inconsistencies, we conclude that Lane’s testimony would not have resulted in a different verdict. Therefore, the trial judge correctly denied defendant’s motion for new trial based on newly discovered evidence and the defendant’s conviction and sentence are hereby affirmed.
AFFIRMED

. Rogers Johnson was convicted of manslaughter in another case in connection with the death of Timothy Loving. His conviction and sentence were affirmed by this court. State v. Johnson, 525 So.2d 745 (La.App 4th Cir.1988).